UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| GUILLERMO BONILLA-CHIRINOS and SANDRA HERNANDEZ, individually and as guardians ad litem of J.B., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WEST SACRAMENTO and police officers KENNETH FELLOWS, MICHELLE TATE, ANTHONY HERRERA, THOMAS MAGGIANO, JENNIFER GRILLAT, ERIC ANGLE, MATTHEW LUIZ, and DAVID STALLIONS, in their individual and official capacities,<br><br>Defendants. | Civ. No. 2:15-2564 WBS EFB<br><br>MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiffs Guillermo Bonilla-Chirinos and Sandra Hernandez, individually and on behalf of their son J.B., brought this action against defendants the City of West Sacramento ("the City") and West Sacramento police officers Kenneth Fellows,

1

Michelle Tate, Anthony Herrera, Thomas Maggiano, Jennifer Grillat, Eric Angle, Matthew Luiz, and David Stallions,[1] alleging, <u>inter alia</u>, that defendants used excessive force in arresting them in violation of their Fourth Amendment rights. (Compl. (Docket No. 1).)  Before the court is defendants' Motion for summary judgment.  (Defs.' Mot. (Docket No. 31).)

I.   <u>Factual and Procedural History</u>

On December 12, 2013, defendants approached plaintiffs' residence with warrants for the arrest of Bonilla-Chirinos and Hernandez. (<u>See</u> Decl. of Guillermo Bonilla-Chirinos ("Bonilla-Chirinos Decl.") ¶¶ 11-12 (Docket No. 35).)  The warrants were issued based on an incident that occurred in May 2013 during which Bonilla-Chirinos was involved in a physical altercation with a representative from a repossession company who was attempting to tow his car and Hernandez drove the car away before the representative could tow it.  (<u>See</u> <u>id.</u> ¶¶ 3, 8-11.)

Upon approaching the front door of plaintiffs' residence, officer Fellows informed Bonilla-Chirinos and Hernandez that defendants were police and had come with warrants for their arrest. (Dep. of Kenneth Fellows at 35.)  Hernandez stated that she would not open the door and requested that Fellows read the arrest warrants to her.  (<u>Id.</u>)  Fellows stated

---

[1] The individual defendants are sued in their individual and official capacities. (Am. Compl. ¶ 2 (Docket No. 14).)  The court will construe this action as brought against the individual defendants only in their individual capacities, as the City is named in this action. <u>See</u> <u>Sherman v. Cty. of Maui</u>, 191 F. App'x 535, 537 (9th Cir. 2006) (noting that claims against municipal officials in their official capacity are "effectively claims against the [municipality] itself").

2

that he would not read the arrest warrants to her, and requested again that she open the door.  (Id.)  She refused.  (Id.)  Fellows then kicked the door open.  (Id.)

Bonilla-Chirinos testifies that immediately upon seeing defendants enter his residence, he "got on [his] knees," "put [his] hands up in the air," and "said 'I surrender.'"  (Bonilla-Chirinos Decl. ¶ 23.)  He testifies that despite his surrender, Fellows "rushed up to [him] and basically tackled [him] by grabbing [his] neck and [his] arm . . . and pulling [his] arm behind [his] back, and then slamming [him] face down to the ground while driving [Fellows'] knee very violently and forcefully into the small of [his] back."  (Id.)  He testifies that Fellows "is a large and muscular man" and put his "entire body weight into driving his knee into [Bonilla-Chirinos'] back."  (Id.)  Bonilla-Chirinos testifies that he "did not resist the arrest in any way."  (Id.)

Hernandez testifies that officer Tate placed her under arrest by "violently grabb[ing], pull[ing,] and twist[ing her] right arm behind [her] back," then placing handcuffs on her.  (Decl. of Sandra Hernandez ("Hernandez Decl.") ¶ 10 (Docket No. 36).)  She testifies that the handcuffs "were much too tight and . . . were hurting [her] wrists," and Tate refused to loosen them when she asked her to do so.  (Id.)  Hernandez testifies that she also "did not resist arrest in any way."  (Id.)

During the arrest, defendants had their guns drawn.  (Dep. of Michelle Tate at 23.)  Hernandez testifies that at one point during the arrest, officer Herrera pointed his gun at J.B., who was four years old at the time.  (Hernandez Decl. ¶ 11.)

3

Hernandez also testifies that after she was placed under arrest, she asked officers Tate and Maggiano if she could call a relative to come pick J.B. up from their residence, and Tate and Maggiano denied her request. (Id. ¶ 15.)

After the arrest, defendants transported plaintiffs to a police station. (Dep. of Sandra Hernandez ("Hernandez Dep.") at 116.) After arriving at the police station, defendants sent J.B. to stay with relatives. (See id. at 129-30.) Hernandez was released from the police station approximately nine hours later, at which time she picked J.B. up from the relatives. (See id. at 130-32.) Bonilla-Chirinos was released from the police station shortly thereafter. (See id. at 130-31.)

Plaintiffs filed this action in December 2015. (Compl.) Citing the above facts and testimony, they bring the following causes of action against defendants under 42 U.S.C. § 1983 ("section 1983")[2]: (1) use of excessive force in arrest in violation of the Fourth Amendment, (2) unreasonable search in violation of the Fourth Amendment, (3) unjustified invasion of privacy in violation of the Fourth Amendment, (4) deprivation of the right to remain silent in violation of the Fifth Amendment, and (5) deprivation of familial association in violation of the Fourteenth Amendment. (Am. Compl. at 5-10 (Docket No. 14).)

---

[2] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

4

1  Defendants now move for judgment as to each of plaintiffs'
2  claims.  (Defs.' Mot.)
3       II.  Legal Standard
4            Summary judgment is proper "if the movant shows that
5  there is no genuine dispute as to any material fact and the
6  movant is entitled to judgment as a matter of law."  Fed. R. Civ.
7  P. 56(a).  A material fact is one that could affect the outcome
8  of the action, and a genuine issue is one for which a reasonable
9  jury could find in favor of the non-moving party.  Anderson v.
10 Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party
11 bears the initial burden of establishing the absence of a genuine
12 issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317,
13 322-23 (1986).  It can satisfy that burden by presenting evidence
14 that negates an essential element of the non-moving party's case
15 or demonstrating that the non-moving party cannot produce
16 evidence to support an essential element for which it will bear
17 the burden of proof at trial.  Id.
18           Once the moving party meets its burden, the burden
19 shifts to the non-moving party to "designate specific facts
20 showing that there is a genuine issue [of material fact] for
21 trial."  Id. at 324.  The non-moving party must "do more than
22 simply show that there is some metaphysical doubt as to the
23 material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio
24 Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a
25 scintilla of evidence . . . will be insufficient; there must be
26 evidence on which the jury could reasonably find for the [non-
27 moving party]."  Anderson, 477 U.S. at 252.
28           In deciding a summary judgment motion, the court must

view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment . . . ." Id.

III. Discussion

    A.   Excessive Force Claim

         i.   Liability of Maggiano, Grillat, Angle, Luiz, and Stallions

Defendants argue, as an initial matter, that the court should grant them judgment as to the liability of officers Maggiano, Grillat, Angle, Luiz, and Stallions for use of excessive force during the December 2013 arrest because "there are no specific facts alleged regarding [those defendants'] actions" during the arrest and plaintiff has merely "lump[ed]" those defendants together with other defendants in discussing the arrest. (Defs.' Mot., Mem. ("Defs.' Mem.") at 3.)

The Ninth Circuit has held that a plaintiff may not "lump all the defendants together" under a "team effort" theory of liability, but must, instead, "base each individual's liability on his own conduct." Chuman v. Wright, 76 F.3d 292, 295 (9th Cir. 1996). In their Opposition to defendants' Motion, plaintiffs neither point to any evidence indicating that Maggiano, Grillat, Angle, Luiz, or Stallions used any force against them during the December 2013 arrest, nor provide any response to defendants' request for judgment as to the liability of those defendants for use of excessive force. In light of

6

1    plaintiffs' failure to cite any evidence as to the liability of
2    Maggiano, Grillat, Angle, Luiz, or Stallions for use of excessive
3    force or respond to defendants' request for judgment as to those
4    defendants for use of such force, the court will grant judgment
5    to Maggiano, Grillat, Angle, Luiz, and Stallions as to
6    plaintiffs' excessive force claim.  See Bias v. Moynihan, 508
7    F.3d 1212, 1219 (9th Cir. 2007) ("A district court does not have
8    a duty to search for evidence that would create a factual
9    dispute."); Bolbol v. City of Daly City, 754 F. Supp. 2d 1095,
10   1115 (N.D. Cal. 2010) ("Plaintiff does not challenge defendants'
11   assertion that she has no cause of action regarding California
12   Penal Code Section 4003 . . . in her opposition brief . . . .
13   Accordingly, the court grants summary judgment in favor of
14   defendants as to this claim.").

             ii.   Monell Liability

16           Defendants next argue that the court should grant them
17   judgment as to the liability of the City for excessive force
18   because plaintiffs have not offered "any facts or evidence"
19   suggesting that the conduct complained of in their excessive
20   force claim--Fellows' and Tate's use of force and Herrera's
21   pointing of a gun despite plaintiffs' non-resistance--was
22   pursuant to City policy or custom.  (Defs.' Mem. at 7.)
23   Plaintiffs respond with the argument that such conduct occurred
24   because the City failed to train the individual defendants in
25   proper arrest procedures, and thus the City may be held liable
26   for the conduct under Monell v. Dep't of Soc. Servs. of City of
27   N.Y., 436 U.S. 658 (1978).  (See Pls.' Opp'n at 17-20 (Docket No.
28   32).)

Under Monell, a city "may be held liable for [a police officer's section 1983] violation only if the . . . officer['s] conduct was a product of City policy or custom." Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005).  A city's failure "to train [officers] about their legal duty to avoid violating citizens' rights may rise to the level of [city] policy [or custom] for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011).  An individual asserting a Monell claim must demonstrate "a conscious or deliberate choice" on the part of the city to decline to train its police despite a need to do so, and "the lack of training actually caused the constitutional harm or deprivation of rights" that is at issue in the case. Flores v. Cty. of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014).

Plaintiffs have not offered any evidence indicating that the conduct complained of in their excessive force claim was due to failure to provide adequate training on the City's part. The only evidence they cite in support of Monell liability for their excessive force claim is Bonilla-Chirinos' testimony that Fellows "attack[ed] and seriously injure[d Bonilla-Chirinos] when [he] had already surrendered and was on his knees with his hands up."[3]  (See Pls.' Opp'n at 19.)  That Fellows may have used unlawful force against Bonilla-Chirinos during his arrest does not speak to whether Fellows used such force because the City failed to provide him proper training.  It is entirely possible

---

[3] Plaintiffs cite other testimony arguing that the warrants for their arrest and their criminal convictions were unlawful in the section of their Opposition discussing Monell liability. (See Pls.' Opp'n at 17-19.)  It is unclear how such testimony supports Monell liability as to their excessive force claim.

1   that in "attack[ing] and seriously injur[ing]" Bonilla-Chirinos
2   despite his having surrendered, Fellows acted contrary to his
3   training.  Because plaintiffs have not provided any evidence
4   indicating that the conduct complained of in their excessive
5   force claim was due to failure to provide adequate training on
6   the City's part, the court will grant judgment to the City as to
7   that claim.

          iii. <u>Merits of Excessive Force Claim Against Fellows, Tate, and Herrera</u>

10  In light of the above discussion, the only defendants
11  remaining for purposes of plaintiffs' excessive force claim are
12  Fellows, Tate, and Herrera.  Defendants' arguments for judgment
13  as to those defendants are based on the merits of plaintiffs'
14  excessive force claim.

15  "Claims against law enforcement officers for the use of
16  excessive force during an arrest are analyzed under the Fourth
17  Amendment[] . . . ."  <u>Arias v. Amador</u>, 61 F. Supp. 3d 960, 974
18  (E.D. Cal. 2014) (O'Neill, J.) (citing <u>Graham v. Connor</u>, 490 U.S.
19  386, 388 (1989)).  "Under the Fourth Amendment, police may use
20  only such force during an arrest as is objectively reasonable
21  under the circumstances."  <u>Su v. Cty. of Sacramento</u>, Civ. No.
22  2:09-1826 WBS GGH, 2010 WL 3238931, at *4 (E.D. Cal. Aug. 12,
23  2010) (citing <u>Graham</u>, 490 U.S. at 397).  Determining whether
24  force used during an arrest was "objectively reasonable" requires
25  "balancing of the amount of force applied against the need for
26  that force under the circumstances."  <u>Atkinson v. Cty. of Tulare</u>,
27  790 F. Supp. 2d 1188, 1202 (E.D. Cal. 2011) (Wanger, J.) (citing
28  <u>Meredith v. Erath</u>, 342 F.3d 1057, 1061 (9th Cir. 2003)).  The

9

'objective reasonableness' inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396.

"[T]he reasonableness of force used is ordinarily a question of fact for the jury."  Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (quoting Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997)).  Because excessive force claims turn on the reasonableness of force used, motions for summary judgment as to such claims are "sparingly" granted.  Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002); see also Smith, 394 F.3d at 701 (noting that excessive force claims "almost always turn on a jury's credibility determinations").

In this case, plaintiffs have offered evidence indicating that during the December 2013 arrest: (1) Fellows "tackled" Bonilla-Chirinos and "dr[ove] his knee very violently and forcefully into [Bonilla-Chirinos'] back," (Bonilla-Chirinos Decl. ¶ 23); (2) Tate "violently grabbed, pulled[,] and twisted [Hernandez's] arm behind [her] back" and "too tight[ly]" fixed handcuffs on her wrists, (Hernandez Decl. ¶ 10); and (3) Herrera pointed a gun at J.B., (id.).  They have also offered evidence indicating that other than Hernandez declining to open the door when asked, plaintiffs did not resist arrest.  (See Bonilla-Chirinos Decl. ¶ 23; Hernandez Decl. ¶ 10.)

Viewing such evidence in the light most favorable to plaintiffs--including assuming that Fellows applied his knee and

10

1  Tate her arm and handcuffs with injurious force--the court finds
2  that such evidence is sufficient to create triable issues of fact
3  as to whether Fellows, Tate, and Herrera used excessive force
4  against Bonilla-Chirinos, Hernandez, and J.B., respectively,
5  during the arrest.  The court's finding is supported by ample
6  Ninth Circuit precedent.  See Moore v. Richmond Police Dep't, 497
7  F. App'x 702, 708 (9th Cir. 2012) ("Where there is no need for
8  force, any force used is constitutionally unreasonable.");
9  Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1093 (9th Cir. 2013)
10 (where individuals "engag[e] in mere passive resistance," use of
11 "non-trivial force" is unlawful); Barnard v. Las Vegas Metro.
12 Police Dep't, 310 F. App'x 990, 992-93 (9th Cir. 2009) (applying
13 "excessive knee pressure on [arrestee's] . . . back despite the
14 fact that he had surrendered and was not resisting arrest"
15 constitutes excessive force); Curiel v. Cty. of Contra Costa, 362
16 F. App'x 824, 830 (9th Cir. 2010) ("[O]verly tight handcuffs may
17 constitute excessive force."); Miller v. Placer Cty., 84 F. App'x
18 973, 974 (9th Cir. 2004) ("[P]ointing a gun at a child when [he]
19 pose[s] no threat to officers constitute[s] excessive force.").

        iv.  Qualified Immunity as to Fellows, Tate, and Herrera

22 As an alternative to judgment on the merits of
23 plaintiffs' excessive force claim, defendants seek judgment as to
24 that claim for Fellows, Tate, and Herrera based on qualified
25 immunity.  (See Defs.' Mem. at 12-13.)
26 Qualified immunity shields government officials "from
27 liability for civil damages insofar as their conduct does not
28 violate clearly established statutory or constitutional rights of

11

which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal citation omitted). The Ninth Circuit has described the qualified immunity inquiry as consisting of the following three-part test:

> First, the court must ask whether[,] taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right?  If the answer is no, the officer is entitled to qualified immunity.  If the answer is yes, the court must proceed to the next question: whether the right was clearly established at the time the officer acted.  That is, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  If the answer is no, the officer is entitled to qualified immunity.  If the answer is yes, the court must answer the final question: whether the officer could have believed, reasonably but mistakenly . . . that his or her conduct did not violate a clearly established constitutional right.  If the answer is yes, the officer is entitled to qualified immunity. If the answer is no, he is not.

Skoog v. Cty. of Clackamas, 469 F.3d 1221, 1229 (9th Cir. 2006) (citing Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).

Viewed in the light most favorable to plaintiffs, the evidence before the court indicates that Fellows used excessive force against Bonilla-Chirinos by injuriously kneeing him in his back despite his having surrendered.  The right to be free from use of police force when one has surrendered was clearly established prior to 2013.  See Moore, 497 F. App'x at 708 (citing, in 2012, Ninth Circuit and Supreme Court cases dating from 1989 to 2010 for the proposition that "any force" is excessive where no force is needed); see also Barnard, 310 F. App'x at 992-93 (citing, in 2009, Ninth Circuit and Supreme Court cases dating from 1989 to 2000 for the proposition that applying

12

1  "excessive knee pressure" on a non-resisting arrestee's back is
2  unconstitutional).  Assuming the amount of force claimed by
3  plaintiffs was used, no reasonable officer could have believed
4  that applying such force to the back of Bonilla-Chirinos after he
5  surrendered was lawful.  Accordingly, the court will not grant
6  qualified immunity to Fellows for use of excessive force.

7           Viewed in the light most favorable to plaintiffs, the
8  evidence before the court also indicates that Tate used excessive
9  force against Hernandez by injuriously twisting her arm behind
10 her back and too tightly fixing handcuffs on her wrists despite
11 her having engaged in mere passive resistance by declining to
12 open the door to her house when asked.  The right to be free from
13 use of non-trivial police force when one engages in mere passive
14 resistance was clearly established prior to 2013.  See Gravelet-
15 Blondin, 728 F.3d at 1093 (holding, in 2013, that "[t]he right to
16 be free from the application of non-trivial force for engaging in
17 mere passive resistance was clearly established prior to 2008");
18 see also Curiel, 362 F. App'x at 830 (citing, in 2010, a 2003
19 Ninth Circuit case for the proposition that "overly tight
20 handcuffs may constitute excessive force").  Again, assuming the
21 amount of force claimed by plaintiffs was used, no reasonable
22 officer could have believed that applying such force to twist the
23 arm and tighten the handcuffs of Hernandez, where she was not
24 actively resisting arrest, was lawful.  Accordingly, the court
25 will not grant qualified immunity to Tate for use of excessive
26 force.

27          Lastly, the evidence before the court indicates Herrera
28 used excessive force against J.B. by pointing a gun at him during

13

1    the arrest.  A non-threatening minor's right to not have a gun
2    pointed at him during an arrest was established prior to 2013.
3    See Miller, 84 F. App'x at 974 (holding, in 2004, that "the only
4    law in existence . . . [is] clear: pointing a gun at a child when
5    they posed no threat to officers constitute[s] excessive force").
6    No reasonable officer could have believed that pointing a gun at
7    J.B. in the manner that plaintiffs claim, where he posed no
8    threat to the officer, was lawful.  Accordingly, the court will
9    not grant qualified immunity to Herrera for use of excessive
10   force.
11       B.   Unreasonable Search, Invasion of Privacy, and Right to
12            Silence Claims
13           Defendants argue that the court should grant them
14   judgment as to plaintiffs' unreasonable search, invasion of
15   privacy, and right to silence claims because plaintiffs neither
16   cite any evidence supporting those claims nor provide any
17   response to their request for judgment as to those claims in
18   their Opposition.  (See Defs.' Reply at 2 (Docket No. 38).)
19   Defendants are correct that plaintiffs neither cite any evidence
20   that appear to support those claims nor respond to defendants'
21   request for judgment as to those claims in their Opposition.
22   Accordingly, the court will grant defendants judgment as to
23   plaintiffs' unreasonable search, invasion of privacy, and right
24   to silence claims.  See Bias, 508 F.3d at 1219; Bolbol, 754 F.
25   Supp. 2d at 1115.
26       C.   Familial Association Claim
27           Plaintiffs' final cause of action asserts that Tate and
28   Maggiano unlawfully deprived Bonilla-Chirinos and Hernandez of

14

their Fourteenth Amendment right to care, custody, and control of J.B. after they were arrested.  (Pls.' Opp'n at 20-21.)

"[T]he Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."  Troxel v. Granville, 530 U.S. 57, 66 (2000).  Parents "cannot be summarily deprived of that [right] without notice and a hearing, except where the [child is] in imminent danger."  Mueller v. Auker, 700 F.3d 1180, 1187 (9th Cir. 2012) (citing Ram v. Rubin, 118 F.3d 1306, 1310 (9th Cir. 1997)).  Where an officer's interference with parents' right to care, custody, and control of their child was not justified by emergency or due process of law, the parents may seek remedy under section 1983.  Kelson v. City of Springfield, 767 F.2d 651, 654 (9th Cir. 1985).

Plaintiffs have offered evidence that after Bonilla-Chirinos and Hernandez were arrested, Hernandez asked Tate and Maggiano if she could call a relative to come pick J.B. up from their residence, and Tate and Maggiano denied her request.  (See Hernandez Decl. ¶ 15.)  Defendants have pointed to no evidence of imminent danger or due process that would appear to justify denial of that request.  Accordingly, there is a triable issue as to whether Tate and Maggiano unlawfully deprived Bonilla-Chirinos and Hernandez of their Fourteenth Amendment right to care, custody, and control of J.B. after their arrest.

The right to care, custody, and control of one's child in the absence of imminent danger or a deprivation of parental rights comporting with due process was clearly established before 2013.  See Ram, 118 F.3d at 1310 ("In 1993, it was clear that a

15

parent had a constitutionally protected right to the care and custody of his children and that he could not be summarily deprived of that custody without notice and a hearing, except when the children were in imminent danger."). No reasonable officer could have believed that depriving Bonilla-Chirinos and Hernandez custody and control of J.B. after their arrest, where there was no emergency or due process for such deprivation, was lawful. See Bhatti v. Cty. of Sacramento, 281 F. App'x 764, 766 (9th Cir. 2008) (holding that "no objective social worker could have believed" that depriving a parent custody and control of his son without emergency or due process was lawful). Accordingly, the court will not grant qualified immunity to Tate or Maggiano as to plaintiffs' Fourteenth Amendment deprivation claim.

The court will grant judgment to Fellows, Herrera, Grillat, Angle, Luiz, Stallions, and the City as to plaintiffs' Fourteenth Amendment deprivation claim, however, as plaintiffs conceded at oral argument that there is no evidence currently before the court supporting the liability of those defendants for deprivation of parental rights.

IT IS THEREFORE ORDERED that defendants' Motion for summary judgment be, and the same hereby is, GRANTED IN PART as follows:

(1) Judgment shall be entered in favor of defendants Maggiano, Grillat, Angle, Luiz, Stallions, and the City on plaintiffs' first cause of action;

(2) Judgment shall be entered in favor of all defendants on plaintiffs' second, third, and fourth causes of action; and

   (3) Judgment shall be entered in favor of defendants Fellows, Herrera, Grillat, Angle, Luiz, Stallions, and the City on plaintiffs' fifth cause of action.

   AND IT IS FURTHER ORDERED that in all other respects, defendants' Motion for Summary Judgment be, and the same hereby is, DENIED.

Dated:  July 25, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE